UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LARRY J. THOMAS,

    Petitioner,

v.                                                      CASE NO. 6:03-cv-1526-Orl-31KRS

JAMES V. CROSBY, et al.,

    Respondents.

**<u>ORDER</u>**

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted. Thereafter, Respondents filed a timely response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 9). Petitioner filed a reply to the response (Doc. No. 14).

Petitioner alleges one claim for relief in his habeas petition: that his Sixth Amendment right to effective assistance of counsel was violated because trial counsel labored under a conflict of interest.

*I.*    *Procedural History*

On May 30, 1997, Petitioner was convicted of unlawful possession of a firearm by a violent career criminal (count two), armed burglary to a dwelling (count three), three counts of robbery with a firearm (counts four, five, and six), and one count of attempted robbery with a firearm (count seven). He was sentenced, as a habitual felony offender, to concurrent fifty year

terms of imprisonment on counts two through six and a concurrent fifteen year term on count seven. The Florida Fifth District Court of Appeal affirmed Petitioner's convictions and sentences. *Thomas v. State*, 725 So. 2d 1171 (Fla. 5th DCA 1998). The Supreme Court of Florida initially granted discretionary review, but, after briefing, determined that review had been improvidently granted. *Thomas v. State*, 803 So. 2d 707 (Fla. 2001).

Petitioner then filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief. The trial court granted relief regarding one ground,[1] but denied all other grounds for relief. The appellate court *per curiam* affirmed the trial court's decision.

## II.  Petitioner's Claim

Petitioner asserts that his trial counsel's loyalty to him was impaired by counsel's personal relationship with the mother of one of the victims. First, Petitioner complains that during opening statements counsel referred to him as a "bad person" and an "evil doer." Next, Petitioner asserts that trial counsel informed him that he had information that would impugn the credibility of Jodi Molnar, one of the victims, but that he could not use it at trial because it was told to him in confidence by Ms. Molnar's mother.

### A.  The State Court Proceedings

#### 1.  Counsel's Motion to Withdraw

The Public Defender's Office was originally appointed to represent Petitioner. However, at his arraignment the Public Defender's request to withdraw was granted, and James Sweeting was appointed as counsel for Petitioner. Mr. Sweeting participated in discovery, which included

---

[1] Petitioner was granted a new trial as to his conviction on count two. The prosecutor then entered a *nolle prosequi* as to that count. (Appendix J at 163-65.)

receiving a copy of the State's witness list.[2] Over two and one-half months after his appointment and on the morning of the scheduled trial, Mr. Sweeting moved to withdraw as counsel for Petitioner.

The motion to withdraw indicated that defense counsel had a "close and intimate relationship with the Mother of one of the victims Jodi Molnar, who's [sic] Mother was once employed by the firm of Sweeting and Halbert, P.A." (Doc. No. 1, Exhibit A at 1.) Trial counsel further indicated that during the victim's mother's course of employment counsel had become aware of matters relating to the victim and her family "under circumstances of the strictest confidence." *Id*. In addition, after she left the employment of counsel's firm, the victim's mother's family retained the law firm to represent them in a civil lawsuit. *Id*. at 1-2.

Before the jury venire was brought to the courtroom, defense counsel addressed his motion to withdraw, as follows:

> Jodie Molnar, which is one of the victims in the case . . . is, in fact, the daughter of the former secretary of our office. And we are concerned and wanted to make sure Mr. Thomas knows, before he goes forward, that there is a relationship between the mother of Jodie Molnar, who is a victim in this case, and that relationship came as a result of her working with my office for about two and a quarter years. She separated from us, I believe, in '95. We have also had a case involving – a construction case involving her father's law firm which has been resolved, it's not active at this time. I think Mr. Thomas needs to be aware of that and that that forms the basis of a motion to withdraw. We're concerned because I don't want to have to visit these issues in the future.

(Appendix A-2 at 6.) The state trial judge then denied the motion to withdraw on the basis of a conflict, finding that no conflict existed. *Id*.

---

[2]Ms. Molnar was listed as a witness for the State.

## 2.    *The Evidence at Trial*

After the denial of the motion to withdraw, the trial commenced. The charges against Petitioner arose out of a break-in and robbery of a condominium occupied by four individuals, all of whom testified at trial. Donald Judd and Charlotte Gardner were in the master bedroom of the home. Ms. Gardner's daughter, Cassandra Gardner, and Cassandra's friend Jodie Molnar were asleep in a second bedroom. Mr. Judd testified that he awoke and went to get something from the refrigerator. Upon exiting the master bedroom, he encountered an armed man in a black mask and gloves who directed him to lay face down on the bed. Mr. Judd described the clothing worn by the individual and identified the shirt that Petitioner was wearing when arrested as the shirt worn by the intruder. He observed a second individual who was also wearing a mask.

Ms. Charlotte Gardner testified that she was awakened by an armed, masked intruder ordering her to lay face down on the bed. She stated that the intruders searched her bedroom and took various items, including her purse and jewelry.

Ms. Cassandra Gardner testified that she was asleep in the same room with Ms. Molnar when a masked intruder with a gun turned on the light. The man told them to put their faces down on the bed and took her purse. She described the man's clothing as a tan polo-style shirt with an off-white collar and denim shorts. Ms. Cassandra Gardner did not see the second intruder.

Ms. Molnar's testimony closely resembled Ms. Cassandra Gardner's. She was awakened when a masked, armed intruder turned on the light in the room where she and her friend were sleeping. Ms. Molnar indicated that the intruder was wearing a tan collared shirt and denim shorts. He searched the room and then left. She also did not see the second intruder.

The robbers took a wallet, purses, cash, jewelry, and guns from the condominium. Within a couple of hours following the break-in, Petitioner and his co-defendant were detained for a traffic violation. During the course of the stop, the law enforcement officer observed the masks, gloves, and guns in the car. Ultimately, many of the items taken during the robbery were also located in the vehicle.

### 3. *The Direct Appeal*

On direct appeal, Petitioner claimed that the trial court's denial of defense counsel's motion to withdraw denied Petitioner his right to effective assistance of counsel. Petitioner argued that his counsel's former working relationship with Ms. Molnar's mother created a conflict of interest and that prejudice had to be presumed. (Appendix B-1 at 9-11.) The state appellate court rejected this contention, stating that "[t]he conflict in this case did not involve representation of clients or former clients with competing interests. Rather the conflict arose from a personal relationship not shown to involve substantial emotional ties. In these circumstances, prejudice is not presumed and the defendant must demonstrate that he has been prejudiced in some way to establish reversible error."[3] (Appendix C at 4.) The appellate court then concluded that Petitioner had "failed to show any acts or omissions by [defense counsel] which even remotely suggest that [he] was ineffective." *Id.*

### B. *Applicability of 28 U.S.C. Section 2254(d)*

Section 2254(d) provides as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

---

[3] The state appellate court also noted that defense counsel's cross-examination of Ms. Molnar "was as vigorous as his cross-examination of another victim." (Appendix C at 4.)

>to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), *cert. denied*, 534 U.S. 1046 (2001),

>Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state courts applied federal law incorrectly, habeas corpus relief is appropriate only if that application was "objectively unreasonable." *Id*. Furthermore, a determination of a factual issue made by a state court shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See id*. at 835-36; 28 U.S.C. § 2254(e)(1).

    *1.    Governing Law*

The Sixth Amendment to the United States Constitution provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Eleventh Circuit Court of Appeals has noted that effective assistance of counsel includes the right to counsel who is "unimpaired by conflicting loyalties." *Duncan v. Alabama*, 881 F. 2d

1013, 1016 (11th Cir. 1989).  This duty of loyalty is "perhaps the most basic of counsel's duties." *Strickland v. Washington*, 466 U.S. 668, 692 (1984).

Generally, ineffective assistance of counsel claims are governed by the two part test set forth by the United States Supreme Court in *Strickland*.  Under *Strickland*, a petitioner must show 1) that counsel's performance was deficient and "fell below an objective standard of reasonableness" and 2) that the deficient performance prejudiced the defense.[4]  *Id*. at 687-88. However, exceptions to the prejudice requirement have been recognized by the United States Supreme Court.  For instance, prejudice has been presumed when a defendant has been denied the assistance of any counsel.  *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984).  In addition, unless the trial court determines that no conflict exists, prejudice is presumed when defense counsel is forced to represent co-defendants despite having raised a timely objection. *See Holloway v. Arkansas*, 435 U.S. 475, 488-89 (1978).  However, the United States Supreme Court has declined to extend the *Holloway* presumption of prejudice when no objection to joint representation is made at trial.  Instead, such a situation requires a showing that an actual conflict adversely affected counsel's representation of a particular defendant before the prejudice component will be negated.  *See Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980).

The United States Supreme Court later noted that it had not extended the *Cuyler* decision beyond the facts of the case – that is a conflict of interest premised on joint representation. *Mickens v. Taylor*, 535 U.S. 162, 174 (2002).  After observing that the Courts of Appeals have

---

[4] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

"applied [*Cuyler*] 'unblinkingly' to 'all kinds of alleged attorney ethical conflicts'" including representation which implicates obligations to former clients, as well as cases involving counsel's personal and financial interests, the *Mickens* Court expressly declined to decide what it recognized as "an open question." *Id*. at 174, 175-76 (*quoting Beets v. Scott*, 65 F.3d 1258, 1266 (5th Cir. 1995), *cert. denied*, 517 U.S. 1157 (1996)). The *Mickens* Court, after noting that *Cuyler* did not support such an expansive application, expressly declined to decide what it recognized as "an open question." *Id*. at 175-76.

### 2. *Contrary to or Unreasonable Application of Clearly Established Federal Law*

As noted above, the state court's opinion is "contrary to" federal law only if it reached a conclusion opposite to that reached by the United States Supreme Court on a question of law or if it decided the case differently than the United States Supreme Court has on a set of materially indistinguishable facts.[5] Under the 'unreasonable application' clause, the state court must have correctly identified the governing United State Supreme Court decision, but unreasonably applied such law to the facts of Petitioner's case.

In the instant case, Petitioner argues two alternative theories under federal law to support his claim. First, he contends that the *Holloway* decision dictates automatic reversal "where defense counsel is forced to represent a defendant over a timely objection." (Doc. No. 1, attachment at 4.) Since his defense counsel filed a motion to withdraw, which was denied,

---

[5]In assessing Petitioner's claim, the state court did not specifically cite to any United States Supreme Court case for the standard to be applied. However, a state court is not required to cite United States Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Petitioner has not shown that the state court reached an opposite conclusion from the United States Supreme Court on a question of law.

Petitioner argues that his defense counsel was compelled to represent him over objection and automatic reversal is warranted.

Alternatively, Petitioner contends that the circumstances of his case run afoul of the standard set forth in *Cuyler*. According to Petitioner, his counsel's personal relationship with the mother of one of the victims constituted an actual conflict which triggered *Cuyler* and negated the need to demonstrate prejudice.

At the time Petitioner's case was heard, the question of whether *Cuyler*'s lessened standard of proof for conflict of interest claims extended beyond the context of joint representation was still open. In the jurisprudence of the United State Supreme Court, the inquiry was still an open question in 2002 when the *Mickens* decision was issued and, in fact, continues to be an open question today. Since it is still unclear whether *Holloway* and *Cuyler* apply to cases other than those involving joint representation of co-defendants, Petitioner's contention that his defense counsel's personal relationship with a victim's mother created an actual conflict is not based upon clearly established Supreme Court precedent. *See Tueros v. Greiner*, 343 F.3d 587, 590 (2nd Cir. 2003) (holding that "it is not an unreasonable interpretation of [*Cuyler*] to conclude that an 'actual conflict' does not exist when the only conflict alleged is premised on a purely subjective belief of a duty of confidentiality."), *cert. denied*, 541 U.S. 1047 (2004); *Smith v. Hofbauer*, 312 F.3d 809, 817-18 (6th Cir. 2002) (holding that the lessened standard set forth in *Cuyler* had not been extended by the Supreme Court beyond multiple concurrent representation; therefore, state court's denial of conflict of interest claim was not an unreasonable application of clearly established federal law), *cert. denied*, 540 U.S. 971 (2003); *Montoya v. Lytle*, 53 Fed. Appx. 496, 498 (10th Cir. 2002) (stating that there is "no 'clearly

9

established federal law, as determined by the Supreme Court of the United States' mandating reversal of a conviction on a mere showing of conflict of interest involving successive representation that adversely affected the attorney's representation of his client"), *cert. denied*, 538 U.S. 1041 (2003). Thus, the state court's decision denying relief was not unreasonable under § 2254(d).

Petitioner also has not shown that he is entitled to relief under the *Strickland* standard.[6] Petitioner argues that defense counsel's opening argument contained unfavorable characterizations of Petitioner and that counsel had information that would have impugned the credibility of one of the victims, but failed to use it due to his personal relationship with the victim's mother.

A review of the record reveals that Petitioner's claim regarding opening statements is meritless.[7] Contrary to Petitioner's assertions, his counsel did not characterize him as a "bad person" or an "evil doer." During his recitation of the facts, counsel acknowledged that evidence of Petitioner's past crimes would be presented. In an effort to counteract the impact of this evidence, counsel informed the jury that the real issue in the case was identity. In keeping with this defense, counsel urged the jury not to let the evidence of Petitioner's past crimes interfere with their obligation to determine whether Petitioner committed the instant crimes. (Appendix A-1 at 120 ("[T]he issue is not whether Mr. Thomas is, you know, a bad person or was in a bad

---

[6]As set forth earlier, in order to prevail under *Strickland*, Petitioner must show both that his counsel's performance fell below an objective standard of reasonableness and that such deficiency prejudiced his defense. Prejudice requires Petitioner to show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

[7]In addition, it appears that this portion of Petitioner's claim is procedurally barred because it was not raised with the state courts.

place or has done bad things in the past, the issue is whether he committed the offenses for which he is charged.")). The tactic was neither unreasonable nor deficient. Furthermore, Petitioner has not shown that this approach rendered his trial fundamentally unfair or unreliable. Having failed to satisfy either element of the *Strickland* analysis, Petitioner is not entitled to relief on this issue.

Petitioner's contention that defense counsel had information that would have impugned the credibility of one of the victims is speculative. Petitioner has not identified the substance of any damaging information. Even assuming that counsel had such information and failed to use it, there is no indication that the failure rendered Petitioner's trial fundamentally unfair or unreliable. First of all, Ms. Molnar's testimony was fairly limited. She testified regarding the clothing worn by Petitioner's co-defendant, and her testimony was corroborated by the testimony given by one of the other victims. On the other hand, the evidence against Petitioner was considerable.[8] Several of the other victims testified as to the crimes, the clothing worn by Petitioner was identified by the victims, and many of the stolen items were recovered from the automobile in which Petitioner and his co-defendant were traveling shortly after the robberies. (Appendix A-1 at 219, 220-21, 253-58.)

   *3.   Conclusion*

The Court thus concludes that trial counsel's conduct was reasonable and that Petitioner has not shown prejudice. Certainly, Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application

---

[8]At sentencing, the trial judge even commented: "I listened very carefully to the testimony in this case and the evidence in this case, and if there is any doubt in my mind that you weren't the person that was the home invader that night, I wouldn't have let the jury decide the case, because that's my job. But I'm convinced you were." (Appendix A-1 at 375.)

of" clearly established federal law as determined by the United States Supreme Court.  Moreover, Petitioner has not demonstrated that the state court made an unreasonable determination of the facts in light of the evidence presented.  Petitioner's § 2254 claim must, therefore, be denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus filed by Larry J. Thomas is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2. The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 1st day of November, 2005.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
sa 11/1
Counsel of Record
Larry J. Thomas